CMM:JMM:jmm
F.# 2005R01900
rohan complaint.wpd

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

UNITED STATES OF AMERICA

    - against -

ROHAN JOHNSON,
    also known as,
    "Ra Ajah-El Ato," and
DONOVAN GILPIN,

               Defendants.
---------------------------------X

AFFIDAVIT IN SUPPORT OF
OF AN APPLICATION FOR
ARREST WARRANT

(T. 18, U.S.C., § 371)

M 05-1521

EASTERN DISTRICT OF NEW YORK, SS:

        CHARLES BUTRUCH, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, duly appointed and according to law and acting as such.

        In or about and between March 2005 and October 27, 2005, both dates being approximate and inclusive, within the Eastern District of New York, the defendants ROHAN JOHNSON, also known as, "Ra Ajah-El Ato," and DONOVAN GILPIN, did knowingly and intentionally conspire to embezzle, steal and purloin money and things of value of the United States and departments thereof, to wit: real estate owned by the United States Department of Housing and Urban Development and United States Department of Veteran's Affairs, in violation of Title 18, United States Code, Sections 641.

        (Title 18, United States Code, Section 371).

The source of your deponent's information and the grounds for his belief are as follows:[1]

**Introduction**

1. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for the past ten years and am currently assigned to the White Collar Fraud squad of the Long Island Resident Agency of the FBI. During my tenure as a Special Agent, I have investigated numerous criminal violations and fraud pertaining to mortgages including mortgages involving the administration of Housing and Urban Development-related programs.

2. The United States Department of Housing and Urban Development ("HUD") provides mortgage insurance for persons purchasing or refinancing certain residential properties pursuant to the National Housing Act, Title 12, United States Code, Section 1701 et seq. The insured loans or mortgages are issued by private lending institutions, such as mortgage companies, banks or savings and loan associations. In the event that a purchaser (i.e., mortgagor) defaults on an insured loan, HUD satisfies the existing balance on the loan and acquires title to the property until such time as the property may be re-sold by means of a public auction.

3. The Department of Veteran's Affairs ("VA") provides a similar mortgage insurance program to qualified veterans pursuant Title 38, United States Code, Section 3710. As in the case of HUD,

---

[1] Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

the VA insures mortgages issued by third-party private lenders to qualified purchasers of residential property. In the event of a default and foreclosure, the VA satisfies the existing balance on the loan and acquires title to the property until such time as the property may be re-sold by means of a public auction.

**394 Emerson Place**
**Uniondale, New York**

4. Pursuant to documents I have reviewed, HUD insured a mortgage issued by Chemical Mortgage Company on December 20, 1990 for a single-family home known as 394 Emerson Place, Uniondale, New York (the "Emerson Place property"). The original mortgagor, whose identity is known to Your affiant, defaulted on the mortgage and a judgment of foreclosure and sale was entered in favor of Chemical by the Supreme Court of the State of New York, Nassau County, on June 8, 1998.

5. On April 29, 2002, HUD acquired the Emerson Place property. A referee's deed conveying title to HUD was recorded in the Nassau County Clerk's Office on the same date.

6. On November 22, 2004, a so-called "Quitclaim Deed" was filed in the Nassau County Clerk's Office purportedly conveying title of the Emerson Place property to a "Ra Ajah-El Ato." An "Indenture" accompanying the quitclaim deed, makes no mention of HUD's existing ownership and title to this property. Rather, the "Indenture" purports to transfer title from Pre-Amble Properties, 5 West Sunrise Highway, Freeport, New York to a "Ato, Ra Ajah-El" residing at 200 Fulton Avenue, Hempstead, New York. The

"Indenture" also bears a signature in the name DONOVAN GILPIN as a witness.

7. During the course of my investigation, I have conferred with Nassau County Police Department Detective James R. Burns, who is assisting in this investigation as part of his assignment to the Forgery Section of the Department's Crimes Against Property Squad. Detective Burns has reviewed and obtained copies of a business certificate for Pre-Amble Properties, which was recorded with the Nassau County Clerk's Office on October 29, 2004. The business certificate identifies the defendant ROHAN JOHNSON as the owner of Pre-Amble Properties and bears a notarized signature in the name of the defendant.

8. During this investigation, I have conferred with Special Agent Michael Carlucci with HUD's Office of Inspector General for Investigations. Special Agent Carlucci has advised me that based on his own review of agency records, HUD has never authorized the transfer of title to the Emerson Place property to Pre-Amble Properties, ROHAN JOHNSON or "Ra Ajah-El Ato."

9. Information regarding the defendant's involvement in illegal activities is derived, in part, from confidential witness one ("CW-1"). CW-1 has been cooperating with the FBI since 2001 following a federal conviction for conspiracy to commit wire fraud. The information CW-1 has provided has been repeatedly corroborated by electronic recording of oral communications, physical surveillance, documentary evidence and by subsequent

events. Based on CW-1's truthfulness in the past, and the repeated corroboration available in this investigation, Your affiant believes CW-1 to be a reliable source of information.

10. CW-1 has advised me that, based on meetings with the defendant and personal observation, ROHAN JOHNSON currently maintains his place of residence at the Emerson Place property.

11. Additionally, Your affiant, as well as Detective Burns and Special Agent Carlucci have conducted physical surveillance of the defendant ROHAN JOHNSON, and have observed JOHNSON exiting the Emerson Place property.

**148-01 225th Street**
**Rosedale, New York**

12. On or about January 16, 1999, HUD insured a mortgage issued by Mellon Mortgage Corporation for a multi-family home known as 148-01 225th Street, Rosedale, New York (the "225th Street property"). The mortgage was subsequently assigned to a successor identified as Chase Mortgage Company West, formerly known as Mellon Mortgage Corporation. The original mortgagor, whose identity is known to Your affiant, defaulted on the mortgage and a judgment of foreclosure and sale was entered by the Supreme Court of the State of New York, Queens County, on April 16, 2001.

13. On May 24, 2002, HUD acquired the 225th Street property through a referee's deed.

14. On November 19, 2004, a "Quitclaim Deed" and "Indenture" were filed in the Queens County Clerk's Office purportedly transferring title of the 225th Street property from HUD

to Pre-Amble Properties "in consideration of Twenty One [sic] Dollars lodged in the Treasury of the Trustee for Good Will and other valuable consideration" supposedly paid by Pre-Amble. The "Indenture" was signed and notarized in the name "Ato, Ra Ajah-El" and also bears a signature of DONOVAN GILPIN as a witness.

15. According to Special Agent Carlucci's review of agency records, HUD has never authorized the transfer of title to the 225th Street property to Pre-Amble Properties, ROHAN JOHNSON or "Ra Ajah-El Ato."

**1059 Braxton Street**
**Uniondale, New York**

16. On or about July 2, 1998, the VA insured a mortgage issued by Countrywide Home Loans, Inc. for a single-family home known as 1059 Braxton Street, Uniondale, New York (the "Braxton Street property"). The original mortgagor, whose identity is known to Your affiant, defaulted on the mortgage and a judgment of foreclosure and sale was entered by the Supreme Court of the State of New York, Nassau County, on September 5, 2000.

17. On June 18, 2001, the VA acquired the Braxton Street property through a referee's deed, and is currently in the process of putting this property on the market for sale by its agent, Ocwen Federal Bank FSB.

18. On or about March 18, 2005, a "Quitclaim Deed" and "Indenture" were recorded in the Nassau County Clerk's Office purportedly transferring title of the Braxton Street property from the VA to Pre-Amble Properties "in consideration of Twenty One

[sic] Dollars lodged in the Treasury of the Trustee for Good Will and other valuable consideration" supposedly paid by Pre-Amble. The "Indenture" also alleges that the conveyance of this property was made "in the course of granting a bona fide gift to [Pre-Amble Property]." Finally, the "Indenture" bears signatures of both the defendant ROHAN JOHNSON as a witness as well as "Ato, Ra Ajah-El" as "Grantor." And the "Indenture" also bears the signature of the defendant DONOVAN GILPIN as a witness.

19. I have been advised by Michael Gallagher, Regional Counsel for the VA that the VA has never authorized the transfer of title to the Braxton Street property to Pre-Amble Properties, ROHAN JOHNSON or "Ra Ajah-El Ato."

**The Defendants' Attempted Sale of the 225th Street and Braxton Street Properties**

20. Information regarding the defendant's involvement in illegal activities is derived, in part, from confidential witness two ("CW-2"). CW-2 has been cooperating with the FBI since 2001 following a federal conviction for conspiracy to commit wire fraud. The information CW-2 has provided has been repeatedly corroborated by electronic recording of oral communications, physical surveillance, documentary evidence and by subsequent events. Based on CW-2's truthfulness in the past, and the repeated corroboration available in this investigation, Your affiant believes CW-2 to be a reliable source of information.

21. In or about July 2005, the defendant DONOVAN GILPIN approached CW-2 and offered to sell residential properties. During

this initial contact, GILPIN claimed to have a power of attorney to sell the Braxton Street property as well as another property that was un-identified at that time.

22. During this period, criminal history records revealed that the defendant JOHNSON was incarcerated in New York City and then Nassau County for, among other charges, aggravated un-licensed operation of a motor vehicle, forgery and false impersonation. During this time, the defendant GILPIN repeatedly contacted CW-2 in an effort to consummate the sale of the Braxton Street property. At Your affiant's direction, CW-2 delayed taking any steps toward the purchase of this property until JOHNSON's release from prison in or about late September 2005.

23. In or about early October 2005, CW-1 and CW-2 met JOHNSON in Hempstead, New York to discuss the possible purchase of a number of properties supposedly owned by the defendant.

24. On October 24, 2005, CW-1 received a telephone call from JOHNSON, who instructed CW-1 to go to GILPIN's residence and retrieve a title report for the 225th Street property. CW-1 then did travel to GILPIN's residence, where GILPIN handed CW-1 a title report that claims that Pre-Amble was the lawful owner of the 225th Street property.

25. Following this meeting, CW-1 then met with JOHNSON, who informed CW-1 that his company, Pre-Amble Properties owned several properties including the 225th Street and Braxton Street properties. JOHNSON informed CW-1 that he was looking to sell both

properties. JOHNSON drove with CW-1 to both properties and showed CW-1 both properties. While showing these properties, JOHNSON produced keys and was able to enter and show the interior of these homes to CW-1. JOHNSON indicated that Pre-Amble Properties acquired the properties via foreclosure proceedings.

26. On October 29, 2005, JOHNSON delivered to CW-1 two documents entitled "Agreement for Deed." Each so-called agreement purported to convey, upon execution by the defendant and CW-1, the 225th Street and Braxton Street properties to CW-1 in exchange for the sum of $300,000 for each property.

27. Subsequently, acting at Your affiant's direction, CW-1 notified JOHNSON that he would not proceed with the purchase of the 225th Street or Braxton Street properties through the use of documents entitled "Agreement for Deed" - an instrument that CW-1 said he had never seen before.

28. On or about November 16, 2005, JOHNSON causes to be delivered to CW-1 documents entitled "Residential Contract of Sale" for both the 225th Street or Braxton Street properties. These contracts again purport that upon execution, Pre-Amble Properties would convey to CW-1 both properties for the sum of $300,000 each.

29. Since the delivery of the contracts, both JOHNSON and GILPIN have repeatedly contacted CW-1 by telephone in an effort to schedule closings on both the 225th Street or Braxton Street properties.

WHEREFORE, it is respectfully requested that arrest

warrants be issued for defendants ROHAN JOHNSON, also known as, "Ra Ajah-El Ato," and DONOVAN GILPIN, so that they may be dealt with according to law.

IT IS FURTHER REQUESTED that, given the reliance on cooperating witnesses, known to the coconspirators referenced above, that this application and warrant remain sealed until further ordered by the Court.

_____
CHARLES F. BUTRUCH
Special Agent
Federal Bureau of Investigation

Sworn to before me this
___ day of December 2005

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK